Good morning, everyone. Judge Kristen, Judge Nelson and I are pleased that we are sitting here in person. We're hopeful that counsel will be able to join us by the end of the year. All right, we'll call the cases in the order listed on the docket. The first case on calendar for argument is United States v. Scharber. Counsel for appellant, please proceed. Good morning, your honors. My name is Carl Gunn and I'm representing Mr. Scharber. There are two questions I'm going to focus on. If I have the time, I'll try to reserve some time for rebuttal if I can. Counsel, if you could keep your voice up, that would be very helpful. All right, I'll try to do that, your honor. The first question is whether the first panel here was just ordering two plain errors corrected or whether it meant to give the government a complete second bite at the apple. The second question is whether the government was entitled to, if I can continue with the metaphor, as big a bite as it took. The first question, the rule of mandate question, is jurisdictional. So that means, first, it can't be waived, and second, it's subject to de novo review. Now there is a general rule that the government points out, and I acknowledge in the opening brief, that remands aren't limited, a general rule that they aren't limited and do give that second bite of the apple. But that's only a general rule. What's your best argument, counsel? What's your best argument that it was limited here? The best argument, your honor, is the language. First of all, it's important to recognize that remands can be limited by implied limitations. It doesn't have to be expressed. I think there's two good points, your honor, two best arguments, if I can suggest them. The first is the language of the opinion, of the remand. The language is consistent with this disposition, not just remanded for resentencing, but resentencing consistent with this disposition. And the disposition was to correct two plain errors. Second, your honor, in finding plain error, the panel opinion found that there was an effect on substantial rights, and it specifically stated in the fourth paragraph of the opinion, if I can read it, it said, quote, a correct calculation would have yielded an offense level of 39 and a guidelines range of 262 to 327 months, unquote. So the disposition, first of all, the disposition was simply to correct two plain errors. Second of all, it was a finding that those errors were plain, and that means they affected substantial rights. They didn't affect substantial rights. If the sentence was, the guideline range was life under some other calculation that no one had even brought up. So I think- But counsel, isn't it true that those were the only issues that were on appeal at that point? No, it's not true, your honor. There was also the role challenge to the rule and offense guideline, and that challenged the obstruction of justice- Well, perhaps I should rephrase my question. The issue of that was addressed that the resentencing was  Well, no one, the government had never made that argument. And that's, I think, part of the problem here is that's what distinguishes the Washington case that the government cites. In the Washington case, the government was saying all along during the appeal that, you know, even if we lose, we can go back on this other theory. And that was implicit in the remand in Washington. That was not implicit in the remand here because the government never even mentioned this new idea, which is- Counsel, would you please advise us of the case, the case that most closely supports your argument, that language that says to resentence consistent with the disposition constitutes a limited remand, what case says that? There's no case that addresses that one way or the other, your honor. There are a couple of cases, though, that are out there where there were implied remands were limited by implication. One is the Thrasher case. There, it was implied by the fact that the court said we're remanding for a hearing on this fact. That meant you couldn't have a hearing on other facts. The Gomez-Padilla case, which is also cited in the opening brief, they remanded because there was error in the district court's consideration of a particular type of evidence or information. When the defendant argued on remand that he wanted the district court to also know the remand was limited to just considering that one, not considering that piece of information that we said the district court shouldn't consider. Those are the two closest cases I found. They clearly demonstrate how a limited remand can be limited by implication. There is no case that addresses this specific language, but we have a little bit more than that because implicit in the finding there is an effect on for a life guideline range. I think it's also implied by that as well. It's interesting here, the pre-sentence report, remember, read the disposition similarly, the pre-sentence report itself said, hey, we're not legal experts and we recognize this requires more legal analysis, but it sounds to us like all they said was to not correct these two errors we rejected and correct the ones we agreed with, so that's why you're going to reach your second argument. Yes, your honor. I will move on to that. The, the key here is that the attempted, you do a cross-reference to the attempted murder guideline. Then the question is whether the attempted murder guideline has either has an adjustment for physical restraint or the other alternatives, or otherwise take such conduct into account. So it's broader than say just the physical restraint adjustment in chapter three, it has that otherwise take such contact into account here. Such conduct was taken into account, both on the specific facts of the attempted murder, the specific facts of the case where the, the, the victims were bound, et cetera, et cetera, but also in the guideline calculation, because the guideline calculation under the attempted murder guideline that was cross-referenced had a four level adjustment for life-threatening bodily injury, and I would submit that life-threatening bodily injury pretty much by definition is also physical restraint. I don't understand that part. If I could interrupt, I I'd read your brief to make that argument that it necessarily includes that attempted murder necessarily includes physical restraint. Is that right? Is that a correct read of your argument? That was my broader argument argument, but the argument I just suggested here is a little bit of a narrower version of it, and that's the life-threatening bodily, there can be attempted murders. The government points out, what if a husband tries to poison his boss, not a husband of someone. Or just takes a shot and misses. I mean, right. But here we, we have an adjustment for life-threatening bodily injuries. So you have more than just a general attempted murder. You have an attempted murder with life-threatening bodily injury. And, and that really is the sort of double counting problem that the defense attorney sort of in passing noted was a problem. You have. Okay. So if I could stop you there to make sure that I'm following you that, that eliminates then what you're describing now eliminates the hypothetical of somebody taking a shot and missing, but go back to the, if you would, to the AUSA's argument about poisoning that doesn't kill somebody, but hurts them. Well, the hypothetical he gave was poison that didn't actually get ingested. If I understand that, but I'm trying to follow your argument. Go ahead. Poison was actually ingested in a way that created life-threatening bodily injury that the person is going to end up being physically restrained because he's going to be incapacitated. So necessarily that's your argument. I believe so. Yes. Okay. I just wanted to make sure I understood your, your position. Thank you. So that's my argument on the guidelines air. I've seen I'm down to two minutes, unless the court has other questions. I'll reserve that for rebuttal. All right. Thank you. Counsel. We'll hear from the government. Thank you, your honors. I may please the court. My name is Will Taylor. I'm an assistant U S attorney here in Anchorage, representing the government. I've also been assigned to this case since the beginning. I just want to pick up where the line of questioning kind of left off. It seems like he's changing the argument now to say that kidnapping enhancement cannot be applied if there's also a bodily injury argument or bodily injury enhancement, and that's different than they argued in the brief. And to the extent that that is his new argument, that issue was very clearly specifically weighed because it was brought up by defense counsel in his and then he elected not to object on that ground. So I think that one is very clearly waived because that would be specific argument that he considered, but then did not object. And that's where he went on in his memo to say, but I cannot refute the guideline calculations of the prosecution here. The, the, the cases that talk about when the subsection adding four points or where the kidnapping enhancement, you know, even the case that's relied upon pretty heavily by the defense, I'm sorry, by the appellant is the fourth circuit case, it discusses when that four points is added because it, it is conduct that is above and beyond the inherent nature of the crime. And the fourth circuit case said, well, that stabbing in particular, because it happened so quickly, the, the holding or the restraint did not go above and beyond. But as this court later found in old chief, there was a stabbing where someone tried to run away. The defendant went after them, they held them. And that seemed to last just for a couple of minutes. In the case we have here, it lasted hours and they weren't just held at the apartment and gagged and bound and beaten, they were put into the back of a car. They were driven for over an hour. And so if this case doesn't qualify for the four point enhancement, and I'm not sure which case does, and it, and it falls squarely into what this court has said in, in old chief, which is that the restraint of the victim was an act that added to the basic crime, even if the stabbing itself necessarily involves some minimal level of restraint. So just because yes, your honor. I didn't mean to interrupt you. I thought you were done, but please finish your thought. I'm sorry. Uh, so even if there's some restraint that's somewhat inherent in the fact that you're being shot or stabbed, that doesn't mean that therefore the kidnapping enhancement can never apply because the kidnapping ultimately ended up in some physical violence against the person. Was this argued the first time around? I mean, did the, did the, did the trial court judge make a decision not to apply this the first time around? Or is it, was it just recalculated and, and advanced the second time? So it was just advanced the second time. And, uh, I mean, essentially the reason for that is you become focused on. During the first appeal, there was no objection to the guideline, um, grouping calculations or anything of that nature. We became focused on the, uh, leadership enhancement and, um, um, I'm just trying to, it wasn't just trying to make sure that that's what the way I read the record, but sometimes on appeal, you know, you're doing this, uh, trying to reverse engineer what happened and it looks like there was a, a different issue that was on everybody's minds that there wasn't the, or post, I should say post ruling about the improper grouping. Uh, it seems that that's the first time around this was raised. And I just want to make sure that there wasn't any, um, ruling that I missed where the, where the judge actually rejected this the first time around. Sounds like there wasn't correct. It was just, you know, when you go back to the, to the drawing board, when that, when the case is sent back, um, also, I mean, it did require a factual determination of defense would have objected, which have been, was the intent to actually murder. Um, so, I mean, on, on remand, they would have had to, uh, address that. Um, I do want to talk about it's your representation that when you went back to the drawing board after the remand, you determined that this, uh, enhancement might be appropriate. Is that what transpired? Yeah, essentially not just the enhancement, but the way that the way that the crime was calculated, you go to kidnapping and then it actually cross-references attempted murder. Yes. And actually the use notes, um, and I, I brought this up at the district court, but we didn't need to really address it. The use notes actually says in a kidnapping case, if the objective is actually murder, it actually references the murder guidelines directly. Now, some other circuits have criticized that, um, during the time period where guidelines were mandatory. And so we didn't need to kind of get into that because this, it resulted in a level of 43, no matter, even under the more favorable calculation that we, that we advanced under. Um, could you address the limited remand issue? Yes. Yeah. That's what I want to move. So as I read the case law, it's not just a general rule that, um, a remand is, is, is, you know, a general remand. It's a, it's a presumption and it can only be overcome by clear evidence. And, um, you know, I think, um, the appellants made some creative arguments, but here there, there really is nothing to show that what the court intended was clearly only to remove that guideline, grouping error, and then not address any other, you know, the correct guidelines. And as this court, uh, stated in United States versus Matthew, the unbunked decision from 2002, in my brief, um, on remand, the district court generally should be free to consider any matters relevant to sentencing, and this is the important part, even those that may not have been raised at the first sentencing hearing. So the fact that this wasn't raised at the first sentencing hearing, I don't think really, um, affects one way or another, whether there was a, a limited remand and there's, there's really nothing in that remand language, which would indicate at all that it was limited, much less by clear evidence. Um, Opposing counsel argues that the, he's, he's pulling this phrase where it says in the prior, uh, order from our court, a correct calculation would have yielded, you know, based on offense level. So he, he's focusing on that. What about that sentence? Yeah. So that's a little, I mean, what he was focusing on his brief was the fact that it said consistent with this opinion and there's nothing inconsistent. Um, you know, I mean, when the court said that it's inconsistent because on appeal, the correct calculation was set for. So that's the basis for his argument. That is inconsistent. Yeah. And I think what the, because the alternative arguments weren't raised, what the court was saying was that if this grouping error hadn't happened, here's what the guideline rates would have been, but when it's sent back and we're no longer at a level 43 or 42 is actually what it was, um, the guidelines can be recalculated. I, I don't think the language is clear that the only thing that was supposed to happen is this guideline, uh, grouping calculation. I think it was clear that what the court was saying was the way you did it was wrong and now you need to go and re-sentence it. And, and it was clear that, um, that those were errors, that there shouldn't have been the firearm enhancement and there shouldn't have been, um, the additional carjacking, um, the carjacking group, um, but you read it to me. You read that prior order from the ninth circuit to say, uh, absent the grouping error, correct calculation would be, that's what you're asking us to read in. Is that right? Correct. Because it wasn't, um, the focus on that appeal obviously was just that grouping issue. It wasn't, you know, it wasn't the calculations that were used at the re-sentencing were not also before the court and the court rejected those and said, no, no, that's wrong. And here's the correct, um, here's the only correct, um, here's the only correct reading of this, um, And so I do want to, um, address the, um, the argument, you know, that this sentence was, was manifestly unreasonable. I know counsel hadn't gotten to that and maybe he will. Um, but the argument seems to be that a life sentence is never appropriate. Um, in a, in a case that doesn't result in murder. And, um, here, obviously it's statutorily authorized and we are. Counsel, you only have a minute left. So if I could, since you're not going to get a chance to come back, could I, I think his argument is that in this case, so I just want a chance to hear the government's response, right? You had a criminal history category of, he had no prior criminal history. It seems to be the case that he's relying pretty heavily on, on, you know, extreme substance abuse, having driven this crime. So I just want, if, if you could take your opportunity to respond to his actual argument, that'd be helpful to me. Yes, Your Honor. So, um, I mean, in the guideline calculations, you know, a category one can still end up resulting in, in life in prison. Um, and as the court noted, you know, and I thought it was, it was powerful in the transcripts, it's more powerful even in person, he said, it's not a sentence anyone takes lightly in sentencing someone to life in prison. But I think it's the appropriate sentence for Mr. Sharver and, you know, sometimes we read these words on paper and forget that this brutal crime happened to real life people, um, and, and it was ongoing and it was extreme. Um, and because of that, you know, the court, the sentence was not manifestly unreasonable. It was not outside the bounds of reasonableness. Thank you, Your Honors. Thank you, counsel. Rebuttal. You're muted, muted. You're muted. Am I unmuted now, Your Honors? Thank you. I apologize for that. Um, going back to the rule of mandate issue, it's of course more than just consistent with this disposition. It's the language I read you about a correct calculation would be, and that's what made it affect substantial rights and be plain air, if there was an effect on substantial rights and there wouldn't be plain air. So all of a sudden finding an alternative sentence of life is inconsistent with the holding of plain air. And it's inconsistent with the disposition in that sense. So there's a little more to it, even than just the language I read and, and the, and in the opinion. Um, I did want to, uh, uh, address a little bit, a couple of points. The, the government, I did make both the broader argument and the narrower argument in my briefs. I talk, I do try, I do argue that attempted murder in general always involves restraint. Um, but I also argued that especially when you have a life threatening bodily injury enhancement, it involves physical restraint. I would submit that argument was certainly not waived. Uh, under this court's case law saying something, well, I can't refute it. I can't think of anything to argue against it. It's not an affirmative waiver. That's just a misapprehension of the law, which the Alf Bernahan case that I signed my brief says is not a waiver. Uh, of course I would argue the air is plain, uh, frankly, because, uh, life threatening bodily injuries clearly restrained, but I think there was an enough, enough of an objection here. It is reflected in the pre-sentence report and it is sort of floated as opposed to real strongly argued. But I think that was enough to preserve the issue. So. Counsel, could I get you to respond to a point on the, on your third argument about substantive unreasonableness, it is, um, it is the case that you argued these mitigating, what I'm going to say loosely, not as a term of art, mitigating factors and circumstances, no criminal history and whatnot, horrendous crime and absolutely horrendous crime, but, but, but I'm wondering what your position is, what we should do with the district court, uh, being, um, made, made note of the note that your client, uh, passed out once he was incarcerated, uh, referring to the victims as rats after he learned that they had been, that they had, that they had survived. What do we do with that? I don't think that's enough to all of a sudden make the sentence life. And remember under the federal guidelines, what we're talking about is life without parole. Right. So my understanding is that I don't want to take too much time on this, but my notes referred to the victims who had survived as rats who needed to be dealt with, is that, first of all, have I got the fact right? Uh, I believe you do your honor. Okay. And we do what with that? Is that part of this, uh, calculation where we can consider whether the judge, uh, clearly very, very disturbed by this crime, why, why was he incorrect? Well, I, I don't think the notes, I think the note is not enough to make or break anything, frankly. This was a, this was a bad crime. I can think of worse attempted murders. I can think of, uh, someone, uh, sexually abusing and then trying to murder a two-year-old child. I can think of a multimillionaire like raping his maid and then trying to strangle her. I mean, this was the standard. The standard is whether or not the sentence imposed by the court was substantively unreasonable. Whether or not a different sentence could have been imposed is not the standard. I understand that your honor. I think the reason it's unreasonable here is it completely eliminates the distinction between attempted murder and murder and it really, because it's life without parole, it really sort of eliminates the distinction between the sentence for attempted murder and aggravated first degree murder, which is what carries life without parole in most jurisdictions. So I think for that, you need something a lot stronger than you have here. Basically what you have here are just aggravating factors in the offense itself. There's nothing aggravating about Mr. Sharber as an individual. In fact, there, you have a number of mitigating factors. So I think that's the counsel. Wasn't the sentence within the guidelines range. It was, but of course there's difficult to say that a sentence is substantively unreasonable when it's within the guidelines range, isn't it? Well, there's case law there's there's case law that says it can be. And of course, when I say it's your best case authority to support the proposition that a case that is within the guidelines range is substantively unreasonable, but what case do you have that says that, what are the facts, cite a case that has facts and we held that the sentence was substantively unreasonable, even when it was in the guidelines, it's the MSQA case, which I cite in my brief, your honor, which was an and I believe the reason they found it was an illegal reentry sentence and they found it unreasonable. I think largely because the aggravated felony that increased the offense level was so old, at least that would. And I think there were some, you know, mitigating factors about the defendant as a person. And here we have no prior record at all, which is somewhat similar and some mitigating factors. I do want to point out though, that the substantive unreasonableness here, we don't even get, you know, if we have the rule of mandate problem and the guideline, you asked me if this was within the range. It's only within the range. If you reject my second argument, my, my stronger arguments, I think are that the rule of mandate didn't allow this because it'd be totally inconsistent with the finding of plain air and life-threatening bodily injury is basically almost always physical restraint. So there's a double counting problem here. Counsel, I don't want to prolong this overly, but you said that you cited a case, the illegal reentry case in your opening brief. Yes. The page it's, um, I didn't discuss it in detail. It's page 28, your honor, United States versus a mess. Cua Vasquez basically is an example of, and recognizes that even a sentence within the guideline range can be unreasonable. There's also the case law that says a guideline sentence is not presumptively reasonable, the general statements of that principle. All right. Any other questions? All right. Thank you. Counsel, thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, R. Nelson